IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-03-169 |
| | § | CIVIL ACTION NO. H-07-844 |
| KHANH DUY HA, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.
§ 2255 is Movant Khanh Duy Ha's § 2255 Motion to Vacate, Set Aside or Correct Sentence
(Document No. 129),[1] and the United States' Answer, Motion to Dismiss, and Motion for Summary
Judgment (Document No. 137). After reviewing Movant's § 2255 Motion, the Government's
Answer, Motion to Dismiss, and Motion for Summary Judgment, the record of the proceedings
before the District Court in the underlying criminal case, and the applicable law, the Magistrate Judge
RECOMMENDS, for the reasons set forth below, that the Government's Motion to for Summary
Judgment (Document No. 137) be GRANTED, that Movant's Motion to Vacate, Set Aside, or
Correct Sentence (Document No. 129) be DENIED, and that this § 2255 proceeding be
DISMISSED.

---

[1] Khanh Duy Ha's Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-07-844 and at Document No. 129 in Criminal Action No. H-03-
169. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.     **Procedural History**

Movant Khanh Duy Ha ("Ha"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255.  This is Ha's first attempt at § 2255 relief.

On May 14, 2003, Ha and Tobin Howard Tran were charged by Indictment with aiding and abetting possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2 (Count one), and conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C.          § 841(a)(1), 841(b)(A)(A)(viii) and 21 U.S.C. § 846 (Count two).  (Document No. 1).  Ha had also been charged by Indictment in the Eastern District of Texas, Beaumont Division, with felony drug charges.  That Indictment was transferred to the Southern District of Texas, Houston Division, on March 24, 2004, because of Ha's intention to plead guilty in both criminal cases.  On April 30, 2004, Ha, pursuant to a written plea agreement, pleaded guilty to Count two of the Indictment in H-03-169 (conspiracy to possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), 841(b)(A)(A)(viii) and 21 U.S.C. § 846) and Count one in H-04-120 (conspiracy to possess with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 846).  (Document Nos. 59, 60, Transcript of Re-Arraignment, No. 116).   Under the written plea agreement pursuant to Rule 11(c)(1)(A) and (B),  the Government agreed to:  (1) not oppose Ha receiving credit for acceptance of responsibility, if he qualified, (2) dismiss Count 1 of the Indictment in H-03-169, (3) recommend a sentence at the low end of the applicable guideline sentencing range if the Government determined Ha provided substantial assistance to the United

States, and (4) not to prosecute Ha for any other narcotics and narcotics related crimes committed in the Southern District of Texas that was discovered during the debriefing process. Ha agreed to waive his appellate rights, including the right to collaterally attack his conviction and sentence. With respect to the waiver of appeal rights, including the right to bring a § 2255 motion, the written plea agreement provides in pertinent part:

Waiver of Right of Appeal

10. The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this agreement. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Knowing that, the defendant waives the right to appeal the plea, conviction and sentence (or the manner in which it was determined) on the grounds set forth in Title 18, United States Code, Section 3742, except for an upward departure. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The defendant is also aware that the United States Constitution and the laws of the United States, including Title 28, United States Code, Section 2255, afford the defendant the right to contest or "collaterally attack" his conviction or sentence after his conviction has become final. Knowing that, the defendant knowingly waives his right to contest [or] "collaterally attack" his plea, conviction and sentence by means of any post-conviction proceeding. This agreement **does** not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(B).

11. In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court. The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does **not** make any promise or representation concerning what sentence the defendant will receive. Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly **waives** his right to appeal in exchange for the concessions made by the United States in this plea agreement.

12.    The United States reserves the right to carry out its responsibilities under guidelines sentencing.  Specifically, the United States reserves the right: (a) to bring its version of the facts of this case, as well as all relevant conduct, including its file and any investigative files to the attention of the Probation Office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with defendant's counsel and the Probation Office and (d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the <u>Sentencing Guidelines and Policy Statements</u>.

The defendant understands that the guideline range under the Sentence Guideline will be determined by the United States Probation Department and that their determination is **not** part of this agreement.

13.    This plea agreement binds **only** the United States Attorney's Office for the Southern District of Texas and the defendant; it does **not** bind any other United States Attorney.  (Document No. 60, pp. 8-9) (emphasis in original).

In addition, the written Plea Agreement was explicit concerning Ha's options should the Government not file a Motion for Downward Departure:

The defendant further agrees that **any** decision by the United States **not** to file a downward departure motion is binding upon the defendant and **cannot** be contested or reviewed in any hearing before any court.

Whether the defendant has breached **any** provision of this plea agreement shall be determined **solely** by the United States through the United States Attorney's Office, whose judgment in that regard is final and such decision shall **not** be contested in any judicial setting.  (Document No. 60, p. 11, ¶ 17). (emphasis in original).

In addition, Ha and his attorney, Chris Flood, executed an addendum to the written Plea Agreement, which states in pertinent part:

I have consulted with my counsel and fully understand all my rights with respect to the indictment pending against me.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines and Policy Statements</u> which apply in my case.  I have read this agreement and carefully reviewed every part of it with my attorney.  I understand this agreement and I voluntarily agree to it.

Further, I understand that no one who has been convicted of a felony offense may possess a firearm. It has been explained to me that I cannot receive a firearm now and will not be able to possess, use or carry a firearm after I am convicted.

I have fully explained to the Defendant, Khanh Duy Ha, his rights with respect to the pending indictment. Further, I have reviewed the provisions of the <u>Sentencing Guidelines and Policy Statements</u> and I have fully explained to the Defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part of this plea agreement with the Defendant. To my knowledge, the Defendant's decision to enter into this agreement is an informed and voluntary one. (Document No. 60).

At Ha's April 30, 2004, Rearraignment, the Court engaged in an extended colloquy with Ha to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement. The Court also advised Ha of the consequences of his plea, including the sentence he faced, the manner in which his sentence would be calculated, and the waiver provisions:

The Court: All right. Mr. Isaacs, tell me what the terms of the plea agreement are.

Mr. Isaacs: Yes, your Honor. The defendant will be pleading to Count 2 of the indictment H-03-169, which will be a charge of conspiracy to possess with intent to distribute methamphetamine.

He will also be pleading true to the indictment, Count 1 of the indictment in H-04-120, which is a Rule 20 transfer from the Eastern District of Texas, which charges the defendant with conspiracy to possess with intent to distribute 3-4 methylenedioxymethamphetamine, which is commonly known as "ecstasy."

The plea agreement will be pursuant to Rule 11(c)(1)(A) and (b).

The government will not oppose the defendant receiving credit for acceptance of responsibility, if he qualifies.

The government will also be reserving the right, if it chooses after– to either file a motion pursuant to Sentencing Guideline Section 5K1.1 or Rule 35, if the government determines that this defendant has supplied substantial assistance to the United States.

The defendant also will waive his appellate rights, which will include any right to collaterally attack his conviction and sentence. However, he will retain the right to

appeal an upward departure which is not requested by the government.  And the government does not intend to ask for any upward departure, state that on the record.

And he agrees to answer any and all questions either in this hearing or any other hearing pursuant to his involvement in this particular offense.

After sentencing, the government also will file a motion with this Court to dismiss any remaining counts.

The Court:  Mr. Ha, does that sound like a fair and accurate summary of the written plea agreement that you propose to enter into this morning?

The Defendant:  Yes, your Honor.

The Court:  Have you had a chance to read over that plea agreement?

The Defendant:  Yes, your Honor.

The Court:  And have you discussed it with Mr. Flood or Mr. Mays or both of them?

The Defendant:  Yes, ma'am.

The Court:  Do you feel like you understand everything in it?

The Defendant:  Yes, ma'am.

The Court:  Do you feel like you understand what you're agreeing to in that plea agreement?

The Defendant:  Yes, ma'am.

The Court:  And you understand what the government is also agreeing to?

The Defendant:  Yes, ma'am.

The Court:  All right.  Are there any other or different promises or assurances that were made to you in an effort to persuade you to plead guilty in this case that are not contained in the written plea agreement?

Mr. Isaacs:  No, your Honor.

6

The Court:  So, all of the agreements and understandings that you have with the government with reference to your plea of guilty are contained in that written plea agreement; is that correct?

The Defendant:  Yes, your Honor.

                                    *                                    *

The Court:  Do you understand that today I do not know what your sentence will be?

The Defendant:  Yes, ma'am.

The Court:  And I won't know until after a probation officer has done an investigation of your case and has written a presentence report that will assist me in sentencing. Do you understand that?

The Defendant:  Yes, your Honor.

The Court:  And you and Mr. Mays or Mr. Flood will have a chance to object to the findings of that presentence report.  Do you understand that?

The Defendant:  Yes, your Honor.

The Court:  Mr. Isaacs will also have a chance to make objections to that presentence report.

The Defendant:  Yes.

The Court:  And we will then have a sentencing hearing, and at that hearing I will rule on any objections that may be made to the presentence report.  I will also rule on any motions that may be made, recommendations that may be made, or any other matters that might be brought to my attention that might have an impact on the sentence you receive.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  And at the conclusion of that sentencing hearing, I will then be in a position to determine if the guidelines apply in your case and if they do, what your sentence is.  Do you understand that?

The Defendant:  Yes, ma'am.

7

The Court;  And if they don't apply, I will also be in a position to determine what your sentence is.  Do you understand that?

The Defendant:  Yes, your Honor.

The Court:  And do you understand that it could be that I give you a sentence that is more severe than the one that you and Mr. Mays or Mr. Flood may have estimated that you might get when you all were talking about how the guidelines might apply in your case?  Do you understand that?

The Defendant:  Yes, your Honor.

The Court:  All right.  And if you get a sentence that is more severe than the one you are anticipating, do you understand you will not be given a chance to withdraw your plea of guilty?

The Defendant:  Yes, I do.

The Court:  All right.  Do you also understand that after your guideline range has been determined under some circumstances the Court would have the authority to depart from the guidelines and to impose a sentence that is either more severe or less severe than a sentence called for by the guidelines?

The Defendant:  Yes, ma'am.

                              *                              *

The Court:  Do you also understand under some circumstances, you or the government would have the right to appeal any sentence that I impose?

The Defendant:  Yes, ma'am.

The Court: But do you understand that by entering into this plea agreement, that you will be waiving or giving up virtually all the rights that you have to appeal any sentence that I impose?

The Defendant:  Yes, ma'am.

The Court:  And in any event, any right that you retain would be governed by the written plea agreement.  Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  Do you also understand that the government is not waiving its right to appeal any sentence that I impose?

The Defendant:  Yes.

*              *

Mr. Isaacs:  With respect to the facts in support of the charge in Indictment No. H-03-169, the government would present witnesses who would testify that on or about April the 17th, 2003, there was an investigation of Tobin Tran's drug trafficking activities.

Tobin Tran met with a DEA Customs – a DEA confidential source and pursuant to this, delivered to the confidential source a sample of methamphetamine.  This delivery was in anticipation of a larger delivery.

At that time it was agreed that Tran would sell the confidential source 1 pound of methamphetamine for $13,000.

Subsequent lab analysis indicated that the gross weight of 30.3 grams containing methamphetamine.  Its net weight was .17 grams of pure methamphetamine.  But the total substance which was transferred was 30.3.  That was gross grams.

Subsequently, on April the 18th, 2003, the confidential source contacted DEA and stated that Tran was going to take possession of the drugs and deliver it to another person.  Agents set up surveillance on Tran and saw him meet with the defendant, Mr. Ha. at an apartment complex located at 2525 Old Farm Road here in Houston.  At this location Ha went into the complex and returned to meet with Mr. Tran, where he gave Mr. Tran a small white package.  Mr. Tran then left the location and then went to an ice cream store called the Marble Slab, which was located on Westheimer.

The confidential source then contacted the agents and stated that Tran was in possession of the drugs and that delivery would occur at this ice cream store.  Agents approached Mr. Tran in front of the Marble Slab and told him that they were conducting a narcotics investigation and asked if he was in possession of any narcotics in his vehicle.  Mr. Tran, the codefendant, stated yes, and the agents searched the vehicle, finding a substance which contained — a substance which the lab analysis indicted had a gross weight of 491 grams, and 1,000 tables of MDMA, methylenedioxymethamphetamine, commonly known as "ecstasy."

Mr. Tran was then arrested and gave a statement that he had received the sample delivered to the confidential source on April 17th from Mr. Ha and the drug seized

at this arrest from Mr. Ha at the apartment complex and that he was to meet Mr. Ha at another location to make payment.

Mr. Tran then placed a call to a third – to a third party to tell Ha to meet him at a location called the Hong Kong Market to get paid.  Mr. Ha was arrested at the Hong Kong Market and stated that he had met Tran at the apartment complex earlier that day and he denied that he had delivered any drugs.  Mr. Ha did state that the people living in the apartment were involved in drug business.  The agents then subsequently set up surveillance at the apartment, and there was a search warrant executed there where drugs were found.  That would be basically the evidence that we would present, your Honor.

The Court:  All right.  And this is for 03-169?

Mr. Isaacs:  Yes, ma'am.

The Court:  All right.  Mr. Ha, tell me what it is you did to commit the crime that's charged against you in H-03-169.

The Defendant:  Can you repeat that again?

The Court:  Tell me in your own words what it is you did to commit the crime that you are pleading guilty to in Count 2 of H-03-169.

The Defendant:  Oh, at that time I went to the apartment to get the 1 pound of ice and a thousand pill of ecstasy and give to Tobin—

The Court:  Okay.  I can't understand you because you're talking so low that I'm having a hard time hearing you.

The Defendant:  At that time I went with Tobin to the apartment to get one thousand pound – 1 pound of ice and a thousand pill of ecstasy.

The Court:  You went to get 1 pound of ice?

The Defendant:  Yes.

The Court:  And?

The Defendant:  1000 pill

The Court:  1000 pills of ecstasy?

The Defendant:  — ecstasy, you.

The Court:  Now, am I wrong that —okay.  Go ahead.

Mr. Isaacs:  Ice is a common word for methamphetamine.

The Court:  Methamphetamine.  Okay.  Methamphetamine and ecstasy.  Okay.  Go ahead.

The Defendant:  Yes.  And I give it to Tobin.  And he leave the apartment and he say he going to call me to get the money later and after that he called and meet me at the Hong Kong Supermarket and where I get arrested at the supermarket, at the Hong Kong Supermarket.

The Court:  Okay.  Mr. Isaacs, tell me what it is you're prepared to prove in H-04-120.

Mr. Isaacs:  As the Court is aware, this is a case which was originally filed in the Eastern District of Texas and transferred here for purposes under Rule 20 for purposes of a plea–

An investigation in the trafficking — sometime in October of 2002, prior to this other offense, investigators were looking into drug trafficking activities of one Tuan Van Pham, who – in the Port Arthur area of the Eastern District of Texas.  Mr. Pham was considered a major distributor of the street drug ecstasy, which is 3-4 methylenedioxymethamphetamine.

On October the 12th, 2002, during a court ordered wiretap of Tuan Van Pham's cellular telephone, intercepted calls revealed that after receiving orders of 500 ecstasy tablets from another individual, Kha Nguyen, and 500 ecstasy tables from another individual, Nhi Bao Pham, Tuan Van Pham placed an order for 1,000 ecstasy tablets with the defendant, Mr. Khanh Duy Ha in Houston.

On October the 13th, 2002, agents followed Tuan Van Pham to the Café Eden restaurant at Bellaire and Fondren here in Houston and observed Mr. Tuan Van Pham meet with the defendant, Khanh Duy Ha.  After watching the surveillance video of this meeting, Tuan Van Pham, who began cooperating with the government after his arrest, verified that he, Pham, received the 1,000 tablets of MDMA from this defendant at the Café Eden restaurant on the occasion, which was October 13th, 2002.

11

According to Tuan Van Pham, he has purchased 500 to 1,000 MDMA tablets at a time from Khanh Duy Ha on approximately five or six occasions for distribution in Port Arthur, Texas.

And this is one offense which there is no amount that's listed.  So, the maximum penalty is zero to 20.  It's a Class C.

The Court: All right. Mr. Ha, again, tell me in your own words what it is you did to commit the crime that you are pleading guilty to in Count 1 of H-04-120.

The Defendant: Okay. At that time Tuan called me and meet me at – I used to work at the Café Eden and Tuan meet me at – called me and meet me.  So, he need a thousand pills of ecstasy.  So, I meet him the back.  At that time I give it to him in the back of the restaurant. (Document No. 116, Transcript of Rearraignment, pp.4-7, 11-14, 19-24).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Ha filed written objections.[2] (Document Nos. 69, 94).  Pursuant to the PSR, Ha's guideline sentencing range was calculated as follows:  (1) Ha had a base offense level of 38.  (2) During a search of an apartment controlled by Ha, agents found evidence of drug trafficking activities and a loaded weapon. Based on the proximity of the gun to the drugs, pursuant to U.S.S.G. § 2D1.1(b)(1), two levels were added to his base offense level. (3) With an adjusted base offense level of 40, and with a criminal history of category III, Ha had a guideline sentence range of 360 months to life imprisonment.

Prior to sentencing, Ha filed a Motion to Withdraw Plea of Guilty (Document No. 101), in which he argued that while he had complied with the written Plea Agreement, the Government had

---

[2] Ha objected (Document No. 64) to several sections of the PSR including paragraphs 23, 56, 57, 61, 62, 63, 65 and 99.  According to Ha, he should not have been held responsible for all the narcotics stored in the apartment.  Ha argued that he should be held accountable only for those narcotics delivered by him to Tobin Tran.  Ha further objected to being held responsible for a firearm. Also, Ha argued for a three level reduction for acceptance of responsibility in light of his numerous debriefings and statements.  Ha maintained that his adjusted offense level should have been 31, which with a criminal history category of III, resulted in a guideline range of 135 months to 168 months.

not.  According to Ha, he had debriefed several times yet the Government declined to recommend a downward departure on the ground that Ha had not been credible during the debriefing process. The Government responded (Document No. 102), and argued that Ha had not made a complete disclosure concerning his knowledge of all persons and aspects of drug trafficking which would make him eligible for a downward departure. On November 18, 2005, Judge Harmon denied Ha's motion prior to sentencing.  (Transcript of Sentencing Hearing, Document No. 117, pp. 4-38).   Also, with respect to Ha's objections to the PSR, Judge Harmon adopted the PSR's finding concerning the firearm:

> The Court:  No, no.  Well, I mean, it seems to me kind of – you know, the guy pays the rent on the place, he keeps his drugs there.  His drugs are —— he keeps money there.  There's a safe there.  And in that safe there are drugs, money, and a gun. And he wouldn't have known about the gun as well as the drugs and the money. (Tr. 41).
>
> \*                                              \*
>
> I think it is clearly improbable.  It's clearly improbable that the weapon was not connected  to the offense because the gun and the drugs and the money were all in the locked safe in the apartment that was Mr. Tran– Mr. Ha's.
>
> \*                                              \*
>
> I mean clearly improbable– when you look at clearly improbable, it is "Daddy had a shot gun in his bedroom closet and the drugs were in the living room, you know, under the couch and, you know, we're not going to charge Sonny with the gun in the closet just because he was dealing drugs out of the living room." I mean, you know, I mean, that's clearly improbable, not all together there.  I mean—
>
> Mr. Flood:  Only if the Court did truly find that, in fact, the gun had been placed there before and was not placed there for the purposes of possessing the drugs.
>
> The Court:  But see, I just make that leap.  I mean, maybe it wasn't put there originally, although I have a hard time with that.  I mean, what was the locked safe for?  But maybe– you know, okay, maybe it wasn't put there.  Maybe it was exactly as your say, he didn't want to have it around his mother.  That's fine.  But he keeps it there.  You know, it's like, "Hey, I got a gun already.  I don't have to go get a

Ruger to protect my drugs and money.  I can use the one I've already got."  I mean, I think that's more logical.

Mr. Flood:  I don't know what to tell you other than, your Honor, that's not — that was not his thinking at the time that the gun was put in the safe; and it was never in his thinking.  I mean, you just would have to know Mr. Ha.  I mean it – that apartment was used by some people – some suppliers.

Certainly, he did it for them —I'm not suggesting otherwise– for them to store their drugs there; and this transaction took place because another individual, Tobin Tran, approached some people at the warehouse, Mr. Tran's warehouse, where the Defendant was looking for drugs; and that Defendant, realizing he was kind of operating a stash house, for lack of a better word, decided to sell some of the supplier's drugs to this guy.

So, it's not a situation where he had a gun in the safe, decided to go in the drug business and thought, "Hey, good.  I've got a gun here and I can use it to protect my drugs."  That's not the situation at all.  That wasn't the situation.

The Court:  Well, I don't think that's what I was saying; but anyway, let's move on because I've already overruled your — or denied your – overruled your objection.
(Document No. 117, pp. 41, 45-46).

With respect to a three level adjustment for acceptance of responsibility, because Ha had given a

statement, his offense level was adjusted accordingly.  With a total offense level of 37, a criminal

history of category III, Ha had a guideline range of 262 to 327 months.  Ha was sentenced to a term

of imprisonment of 262 months as to count 2 in H-03-169, and 240 months as to Count 1 in H-04-

120, the terms to be served concurrent, to be followed by a 5 year term of supervised release on

Count 2 in H-03-169, and a 3 year term on Count 1 in H-04-120, and a $200 special assessment.

(Document No. 104, Transcript of Sentencing Hearing, Document No. 117).  The Government's

Motion to Dismiss the remaining counts was granted.  (Document Nos. 107, 108).  With respect to

Ha's sentence, Judge Harmon stated:

The Court:  Mr. Ha is a 35 year old permanent resident alien from Vietnam before the Court for sentencing under separate docket numbers charging conspiracy to possess with intent to distribute methamphetamine and MDMA or Ecstasy respectively.

Under the United States Sentencing Guidelines grouping rules, all drugs from the two cases were combined, although the conduct associated with 03-169 alone yielded a voluminous relevant conduct total in excess of the highest base offense level.  And then we found that a firearm was in Mr. Ha's possession in connection with his drug trafficking activities.

The evidence reveals that Mr. Has was a prolific distributor of illicit substances in and around the Houston area.  He was brought to the United States with his sister by his mother during their — during his preadolescence with the hope of attaining a better life; and rather than availing himself of legitimate opportunities to foster success in this country, Mr. Ha chose the path of illegality to the detriment of himself, his family, and the community.

He — his background discloses that he abandoned a post high school education and has had a questionable employment history after closure of a family convenience store in 1999.

At the time he committed the instant offenses, he was on probation for a state drug possession charge.  Aggravating factors in his case include his involvement with an amount of drugs significantly above the highest base offense level threshold, his drug-related and overall recidivism, an inability or unwillingness to learn from and respect past conduct with the state legal system which was treated him leniently, and an offense involvement which is, in the best light, narrowly below an aggravating role player and indicative of a major drug distributor.

But because of the substantial guideline range in the case, I believe that a sentence at the low end of the guidelines is appropriate in this case and will satisfy the sentencing objectives of punishment, deterrence, and incapacitation.  (Transcript of Sentencing Hearing, Document No. 117, pp. 54-56).

Judgment was entered on December 2, 2005. (Document No. 110).  Ha appealed to the Fifth Circuit

Court of Appeals.  (Document No. 105).  On December 11, 2006, the Fifth Circuit dismissed Ha's

appeal. (Document No. 127, 128).   The Fifth Circuit wrote:

Khanh Duy Ha appeals his guilty plea conviction and sentence for conspiracy to possess with intent to distribute methamphetamine and conspiracy to possess with intent to distribute ecstasy.  Ha argues that the district court clearly erred in enhancing

his offense level pursuant to U.S.S.G. § 2D1.1(b)(1) and that his guilty plea was rendered involuntary when the Government breached the plea agreement by failing to move for a U.S.S.G. § 5K1.1 departure.

We first address Ha's breach argument, which we review de novo.  *See United States v. Saling*, 205 F.3d 764, 766 (5th Cir. 2000).   In Ha's plea agreement, the Government retained sole discretion to move for a § 5K1.1 departure, and Ha does not argue that the Government's refusal to do so was based on an unconstitutional motive.  *See United States v. Garcia-Bonilla*, 11 F.3d 45, 46 (5th Cir. 1993). Furthermore, the Government's conduct was not inconsistent with the parties' reasonable understanding of the agreement.  *See United States v. Wilder*, 15 F.3d 1292, 1295 (5th Cir. 1994).  In light of the foregoing, Ha has not borne his burden of establishing by a preponderance of the evidence that the Government breached the plea agreement.  *See United States v. Price*, 95 F.3d 364, 367 (5th Cir. 1996).

Ha's plea agreement contained an appeal waiver, which the Government seeks to enforce and which the record establishes was entered into knowingly and voluntarily. *See United States v. Robinson*, 187 F.3d 516, 517 (5th Cir. 1999).  Therefore, Ha's challenge to the § 2D1.1(b)(1) enhancement is barred by his appeal waiver and is dismissed.  *See United States v. Melancon*, 972 F.2d 566, 568 (1992).  (Document No. 127).

The docket sheet reveals that Ha filed a § 2255 motion (Document No. 129) on March 12, 2007. In his § 2255 motion, Ha argues that his plea was unknowing and involuntary; that his counsel was ineffective because he allowed him to plead guilty before a PSR had been prepared, and that the Government improperly used information about Ha's possession of a firearm.  The Government has answered and has moved to dismiss the instant action on the ground that Ha, as part of his written Plea Agreement, waived the right to bring a motion under § 2255, and that his written Plea Agreement should be enforced.  (Document No. 137).  The Government further argues that even assuming that Ha had not waived his right to pursue relief under § 2255, he nevertheless is not entitled relief, because the gist of Ha's contentions relate to his counsel's actions with respect to his sentence and are without merit.  (Document No. 137).  This § 2255 proceeding is ripe for ruling.

**II. Discussion**

16

### A.  Wavier

A defendant's waiver of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary.  *United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994) (Enforcing defendant's voluntary and knowing waiver of § 2255); *United States v. McKinney,* 406 F.3d 744, 746-47 & n.5 (5th Cir. 2005) (Enforcing, post-*Booker*, a waiver of appeal right that was signed prior to the issuance of *Booker).* Such waivers, however, do not "preclude review of a sentence that exceeds the statutory maximum." *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004).  In the context of a plea agreement waiver, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute.  *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005); *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir.), *cert. denied*, 126 S.Ct. 502 (2005). In addition, when a defendant alleges that his counsel was ineffective in negotiating a plea agreement, such ineffectiveness claims are not barred by the waiver.  *See United States v. White,* 307 F.3d 336, 343 (5th Cir. 2002) ("[i]neffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself."); *United States v. Cockerham,* 237 F.3d 1179, 1187 (10th Cir. 2001) ("[W]e hold that a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver.  Collateral attacks based on ineffective assistance of counsel claims that are characterized as falling outside that category are waivable."), *cert. denied*, 534 U.S. 1085 (2002); *DeRoo v. United States*, 223 F.3d 919, 924 (8th Cir. 2000) ("A defendant's plea agreement waiver of the right to seek section 2255 post-conviction relief does not waive defendant's

right to argue, pursuant to that section, that the decision to enter into the plea was not knowing and voluntary because it was the result of ineffective assistance of counsel."); *Mason v. United States,* 211 F.3d 1065, 1069 (7th Cir. 2000) (where the ineffectiveness claims raised in a § 2255 motion relate to counsel's performance at sentencing, the defendant's plea agreement waiver of this right to challenge his conviction in a § 2255 proceeding is enforceable), *cert. denied,* 531 U.S. 1175 (2001).[3] Ineffective assistance of counsel claims, including challenges to counsel's performance at sentencing, which do not relate to the validity of the Plea Agreement and waiver, can be waived. *White,* 307 F.3d at 343.  Otherwise, "[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about the process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result.  A knowing and intelligent waiver should not be so easily evaded." *White,* 307 F.3d at 344.

Here, pursuant to a written Plea Agreement, Ha waived his right to appeal and waived his right to collaterally attack his plea, conviction and sentence.  As discussed above, the written Plea Agreement was explicit with respect to the waiver of the right to appeal and to pursue collateral relief. (Document No.60, ¶ 10-13).

---

[3] There are some other limited situations in which a plea agreement waiver of the right to seek collateral review under § 2255 is not enforceable, such as where the sentence imposed violates the terms of the plea agreement, the sentence is illegal, or the Government has suppressed exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).  *See DeRoo*, 223 F.3d at 923 ("defendants cannot waive their right to appeal an illegal sentence or a sentence imposed in violation of the terms of an agreement"); *United States v. Baramdyka,* 95 F.3d 840, 843 (9th Cir. 1996) ("the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty"), *cert. denied,* 520 U.S. 1132 (1997); *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004) (Waiver does not preclude review of a sentence that exceeds the statutory maximum).  None of those circumstances is at issue in this proceeding.

In addition, at his Rearraignment on April 30, 2004, the Court engaged in an extended colloquy to ensure that Ha was competent to participate in the Rearraignment proceedings, had read the written Plea Agreement, discussed the contents of the written Plea Agreement with counsel and understood the agreement, that no promises had been made to induce his plea, that he understood the offense to which he was pleading guilty, the maximum sentence he faced, the rights he was giving up by virtue of his guilty plea, and the factual basis of the charges and his guilty plea. The Court also advised Ha about the waiver provisions.   Based on Ha's responses during the lengthy colloquy, Judge Harmon concluded that Ha's guilty plea and waiver of his right to appeal and collaterally attack his conviction and/or sentence was knowing and voluntary.

Given Ha's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison,* 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights which he was waiving, that he understood his possible range of punishment and how his sentence would be computed, and that he understood that he had waived his right to appeal and to file a post conviction proceeding, Ha has not shown that his plea was not counseled, knowing and voluntary, and upon this record, Ha's plea agreement waiver of his right to collaterally attack his conviction with a § 2255 motion is enforceable. Ha's sentence does not exceed the statutory maximum – that is, the maximum sentence allowed by statute, *see* 18 U.S.C.§ 2252A(a)(5)(B) (maximum term of life imprisonment), and does not constitute an upward departure from the Sentencing Guidelines. *See United States v. McKinney*, 406 F.3d 744, 746-47 (5th Cir. 2005).  Moreover, Ha's ineffective assistance of counsel claims relate to counsel's performance at sentencing, and not to the validity of the Plea Agreement and waiver, and therefore are covered by waiver.  Because Ha's plea agreement, and waiver of appeal and collateral

rights contained therein, were knowingly, voluntarily, and intelligently entered, because Ha has

waived his right to bring a § 2255 motion, and because that waiver is valid and should be enforced,

it serves as a bar to the instant § 2255 motion.  Upon this record, the Government is entitled to

summary judgment on Ha's claims pursuant to Ha's plea agreement waiver,[4]  *see  Mason v. United

States*, 211 F.3d 1065, 1069 (7th Cir. 2000); *Davila*, 258 F.3d at 451-52; *United States v. Nguyen*,

2005 WL 14090 (E.D. La. 2005); *Morua v. United States*, 2005 WL 1745474 (S.D.Tex. 2005)

(Hittner, J.); *United States v. Rohmfeld*, 2006 WL 126636 (S.D.Tex. 2006) (Jack, J.), and this § 2255

proceeding is subject to dismissal.

## B.  Merits

Claims of ineffective assistance of counsel are generally measured by the standard of

*Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show

that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could

not be had.  *Strickland*, 466 U.S. at 687.  Deficiency is judged by an objective reasonableness

standard, with great deference given to counsel and a presumption that the disputed conduct is

reasonable.  *Id*. at 687-88.  The prejudice element requires a petitioner to prove that absent the

disputed conduct of counsel, the outcome would have been both different and more favorable.  *Id*.

at 694-95.  Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be

---

[4] Under Rule 12 of the Rules governing § 2255 motions, the Federal Rules of Civil Procedure, including Rule 56, which provides for summary judgment, are generally applicable. Under Rule 56(c), summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Here, because the evidence in the record shows that Ha's plea was knowing and voluntary, there is no genuine issue of material fact relative to the validity of Ha's guilty plea or his waiver of his direct appeal and waiver of pursuing collateral review under § 2255.  Summary judgment is therefore warranted on Ha's plea agreement waivers.

entitled to habeas relief.  The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong.  *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*).  To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel.  The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record.  Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense.  *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984).   The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct.  *Strickland,* 466 U.S. at 690.  "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices."  *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).  The court's role "under § 2255 is not to audit decisions that are

within the bounds of professional prudence." *United States v. Molina-Uribe,* 429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied,* (2006).  In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied,* 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).  Thus, Ha  "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id. T*he specific example of counsel's ineffective assistance, which Ha cites to in support of ineffectiveness claim, is that counsel should have requested that the PSR be prepared *prior*  to sentencing.  The record shows that Ha was advised by Judge Harmon that the PSR would be prepared after his change of plea and that he would be given the opportunity to file written objections. The  record shows that Ha's counsel did file written objections to the PSR and at sentencing re-urged the objections, including his objection to the upward adjustment based on the firearm found in a safe in Ha's apartment. The record affirmatively shows that Ha's counsel was not deficient and there is no evidence that any alleged error prejudiced Ha within the meaning of *Strickland.*  In conclusion, Ha has offered no proof as to how his counsel's performance was objectively deficient, or proof that such deficient performance prejudiced him in any way.  *See Strickland,* 466 U.S. at 687. Therefore, no relief is available under § 2255 on the ineffective assistance of counsel claim.

**IV.  Conclusion and Recommendation**

Based on the foregoing, and the conclusion that Ha's guilty plea was knowing and voluntary and that his waiver of his right to collaterally attack his conviction should be enforced, and further given that no relief is available to Ha on the merit of his claims, it is

RECOMMENDED that the Government's Motion to Dismiss (Document No. 137) be GRANTED, that Movant Ha's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 129) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 21st day of  July, 2008.

Frances H. Stacy
United States Magistrate Judge